IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| PAUL PALMER & DONNA ROSE, | ) | |
| | ) | |
| Plaintiffs, | ) | 2:15-cv-13567 |
| | ) | |
| v. | ) | |
| | ) | |
| DELTA AIRLINES INC. & | ) | |
| WAYNE COUNTY AIRPORT AUTHORITY, | ) | |
| | ) | |
| Defendants. | ) | |
| | / | |

## VERIFIED COMPLAINT

Plaintiffs Paul Palmer and Donna Rose hereby sue Delta Airlines Inc. and the

Wayne County Airport Authority, and state as follows:

## INTRODUCTION

1. Plaintiffs bring this action to put an end to systemic discrimination faced

   by disabled riders of public transportation, and to finally answer the

   "worthy question" why Defendants Wayne County Airport Authority and

   Delta Air Lines, Inc., force public transportation providers at Detroit Metro

   Airport ("DTW") to load and unload in the farthest possible corner of the

   Ground Transportation Center ("GTC"), a discriminatory location that

   poses a number of accessibility and safety issues in violation of the

   Michigan Persons with Disabilities Civil Rights Act ("PWDA"), MCL



NYMAN TURKISH PC
20700 Civic Center Dr.
Suite 115
Southfield, MI 48076
P: (248) 284-2480

37.1101, the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. ("ADA), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq, and the Fourteenth Amendment, when they allow other buses, but not public transit buses, direct access to an area known as "Door 402" at the GTC, which offers the **shortest accessible route** to the McNamara Terminal from the GTC.

2. Defendants moved the loading area for public transportation, including the services known as SMART, AirRide, and Michigan Flyer, from the accessible International Arrivals location, to the farthest possible and inaccessible corner of the GTC, on or around September 22, 2014.

3. Plaintiffs are aware of another cause of action in this Court related to the relocation of public transportation, <u>Harris et al v. Wayne County Airport Authority</u>; however, the settlement reached therein has not resolved their specific violations of State and Federal Law and the conduct by the Defendants after the settlement agreement in giving some buses, but not public transportation buses, direct access to Door 402 at the GTC, which offers the "shortest accessible route" from a bus parked in the GTC to the McNamara Terminal, continues to illegally discriminate against them on the basis of their disabilities. **Exhibit A, Opinion and Order on Motion to Enforce at Pg. ID #1007, pg. 17).**



NYMAN TURKISH PC

20700 Civic Center Dr.
Suite 115
Southfield, MI 48076
P: (248) 284-2480

4. With the move from International Arrivals to the inaccessible GTC, Defendants have severely limited the ability of Plaintiffs, and other disabled persons similarly situated, to access DTW independently. Defendants needlessly subject the Plaintiffs, and those similarly situated, to unnecessary risk of bodily injury and death.

5. By ignoring the needs and dignity of Plaintiffs, and those similarly situated, Defendants treat them as second-class citizens, unfairly and unjustly ignore their basic rights to equality and dignity, and cause embarrassment, humiliation, harassment, and emotional distress. Accordingly, Plaintiffs seek declaratory relief stating that the boarding location at the GTC violates the PWDA, ADA, Rehabilitation Act, and the Fourteenth Amendment, and injunctive relief requiring Defendants to relocate the public transportation boarding location to the area directly outside of Door 402 at the GTC, or a similarly accessible location, that constitutes the shortest-accessible route.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331, because Plaintiffs' claims arise under federal statutes, specifically the Americans with Disabilities Act of 1990, as amended and the Rehabilitation Act of 1973, as well as the Fourteenth Amendment of



NYMAN TURKISH PC

20700 Civic Center Dr.
Suite 115
Southfield, MI 48076
P: (248) 284-2480

the United States Constitution. In addition, this Court has jurisdiction over Plaintiffs' claims for declaratory relief, pursuant to 28 U.S.C. §§ 2201-02 and jurisdiction over Plaintiff's claims for injunctive relief pursuant to 15 U.S.C. § 1116.

7. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367, as the claim arises from the same set of operative facts.

8. Venue is proper in the Eastern District of Michigan, Southern Division, because Defendant Wayne County Airport Authority is situated within the district pursuant to 28 U.S.C. § 1391, and because Defendant Delta Airlines, Inc. is subject to the Court's personal jurisdiction pursuant to 28 U.S.C. § 1391, and because the events, acts, and omissions giving rise to Plaintiffs' claims occurred in this District.

## PARTIES

9. Plaintiff Paul Palmer, a consummate advocate for individuals living with disabilities, is an individual who uses a wheelchair as a result of a life-long struggle with Cerebral Palsy, living in Lansing, MI.

   a. In addition to mobility issues, Plaintiff Paul Palmer has difficulty communicating as a result of Cerebral Palsy.

   b. Plaintiff Paul Palmer also suffers from breathing difficulties.



NT NYMAN TURKISH PC
20700 Civic Center Dr.
Suite 115
Southfield, MI 48076
P: (248) 284-2480

   c. Plaintiff Paul Palmer has travelled to DTW completely independently in the past using public transportation, including Michigan Flyer, and wishes to do so again in the future.

10. Plaintiff Donna Rose is a totally blind individual, living in East Lansing, MI.

   a. Plaintiff Donna Rose has also undergone a kidney transplant. As a result of this procedure, she is required to take anti-rejection drugs, which renders her unable to tolerate heat or cold and has been advised by her doctors to avoid spending any time in extreme temperatures.

   b. Plaintiff Donna Rose also suffers from spinocerebellar ataxia ("SCA"), a progressive condition which hinders her balance, causes her trouble swallowing, and restricts her ability to expand her lungs, making breathing difficult.

   c. Plaintiff Donna Rose wishes to be able to access DTW independently in the future using public transportation, specifically Michigan Flyer.

11. Plaintiffs have standing to bring the present cause of action.

   a. Plaintiffs are physically disabled according to the definition provided by the ADA as they are either "legally blind,"



NYMAN TURKISH ₨
20700 Civic Center Dr.
Suite 115
Southfield, MI 48076
P: (248) 284-2480

"substantially impaired in the major life activity of walking," or because they suffer from a "physical or mental impairment that substantially limits one or more major life activities". 42 U.S.C. 12102.

b. Plaintiffs are physically disabled according to the definition provided by the Rehabilitation Act of 1973 because they suffer from physical or mental impairments that result "in a substantial impediment to employment." 29 U.S.C. § 705(20)(A)(i).

c. Plaintiffs are physically disabled according to the definition provided by the Michigan Persons with Disabilities Civil Rights Act because they suffer from a "determinable physical or mental characteristic," which, is not related to their ability to "utilize and benefit from a place of public accommodation or public service." MCL 37.1103(d).

d. Plaintiffs have traveled out of DTW previously and plan to use the facility again in the future, and wish to have equal access to public transit facilities which includes Michigan Flyer.

e. Defendants' actions have denied Plaintiffs adequate access and mobility when travelling through DTW, specifically when using public transportation services such as Michigan Flyer, which



NYMAN TURKISH PC
20700 Civic Center Dr.
Suite 115
Southfield, MI 48076
P: (248) 284-2480

previously allowed individuals with disabilities to travel freely and independently to DTW.

12. Defendant Wayne County Airport Authority ("WCAA") is a public, government entity within the meaning and definition of the ADA, as it was chartered by the Michigan Legislature in 2002 to operate DTW.

13. Defendant Delta Airlines, Inc. ("Delta") is a corporation with its corporate headquarters located in Atlanta, GA. Defendant Delta operates a major hub at Detroit Metro Airport and exerts operational control over the terminal proper and surrounding facilities.

## FACTUAL ALLEGATIONS

14. Defendant Wayne County Airport Authority is the government chartered entity created by the legislature to operate DTW.

15. DTW is a major hub for Defendant Delta.

16. Defendants have a unique relationship, whereby Defendant Delta exercises control over operations at DTW McNamara Terminal, the location in question.

   a. Northwest Airlines, the predecessor at DTW to Defendant Delta, exercised substantial control over construction of the McNamara Terminal—"the carrier [Northwest] has acted as a project developer with design and construction control and wide-ranging financial


NYMAN TURKISH PC
20700 Civic Center Dr.
Suite 115
Southfield, MI 48076
P: (248) 284-2480

responsibility. The [Wayne County Airport Authority's] role has been restricted to setting and enforcing standards, approving major construction elements, and maintaining general project oversight in its landlord function." **(Exhibit B, Contracts, Financing Arrangements, and Public Ownership—An Empirical Analysis of the US Airport Governance Model, pg. 28).**

b. Under the terms of the Wayne County Airport Authority Competition Plan Update (**Attached as Exhibit C**), capital projects at DTW must be approved "with 85% of the landed weight of all Signatory Airlines." Defendant Delta constitutes approximately 75% of total landed weight at DTW, and thus is effectively able to control Defendant WCAA's construction projects at DTW.

c. Additionally, under the terms of the Competition Plan Update, airline landing fees are calculated based on the amount of money needed for DTW to break even, less the amount received by DTW in non-airline revenues (such as parking), thus giving Defendant Delta an incentive to limit public transportation access, which does not generate revenue for DTW. **(Exhibit C).**



20700 Civic Center Dr.
Suite 115
Southfield, MI 48076
P: (248) 284-2480

d. Because Delta, and its partners, are the exclusive tenants of the McNamara Terminal, they are capable of influencing policy and procedures, which are not normally the purview of a tenant airline.

e. Delta Air Lines exercises significant day-to-day control over the workings of the McNamara Terminal and is responsible, under the terms of its lease and other contractual arrangements with WCAA, as well as FAA Requirements and Federal Statutes, for accommodating persons with disabilities who use the McNamara Terminal.

f. WCAA has asserted publicly, through a board member, that their ability to make alterations to the McNamara Terminal, including the parking garage which houses the GTC, is limited by Delta's authority.

g. Shortly before the move of public transportation, Andrea Newman, who is Senior Vice President of Delta Airlines and also serves on the Board of Regents for the University of Michigan ("U of M"), exchanged emails with Bobby Dishell, former U of M Student Body President, about his concerns over the relocation of public transportation, suggesting that she "actually know[s] all those people and perhaps [she] can help." The two scheduled a meeting with



NYMAN TURKISH PC
20700 Civic Center Dr.
Suite 115
Southfield, MI 48076
P: (248) 284-2480

counsel for Defendant Wayne County Airport Authority. Since the move, AirBus, the public transportation provider that serves U of M students and faculty, has been allowed to load and unload in the preferential Door 402 location, but no other public transportation provider has been allowed to do the same. **(Exhibit D, Andrea Newman Emails).**

17. Plaintiffs were able to access DTW via public transportation companies, such as SMART, Michigan Flyer, and AirRide, and wish to continue to have access in the future.

18. In the Fall of 2014, Defendant Wayne County Airport Authority announced its plan to relocate SMART, Michigan Flyer and AirRide services to the farthest corner of the Ground Transportation Center ("GTC"), effective September 22, 2014. **(Exhibit E, M-Live Article).**

19. The new location at the GTC is outside the airport proper, across the street, and 600 feet down, forcing passengers to travel approximately 900 feet from the terminal to the boarding location.

20. The prior boarding location at International Arrivals was within the terminal proper, just outside a main door that allowed direct access to the curb.



NT NYMAN TURKISH PLLC
20700 Civic Center Dr.
Suite 115
Southfield, MI 48076
P: (248) 284-2480

21. Defendants claim that the relocation of SMART, Michigan Flyer and AirRide was due to safety and congestion concerns at International Arrivals; however, Defendants continue to allow Great Lakes Bus, the Airport and Delta Employee Shuttle, which makes approximately 168 roundtrips per day, to use the International Arrivals location.

22. Michigan Flyer and AirRide, which were relocated to the GTC location, make approximately 13 roundtrips per day.

23. The GTC location presents serious accessibility and safety problems, and is in violation of the ADA, the PWDA, Section 504 of the Rehabilitation Act, and the Fourteenth Amendment of the United States Constitution. Violations include, but are not limited to:

   a. The current location fundamentally limits the ability of persons with disabilities to access the accommodations and services available at DTW.

   b. The boarding location is approximately 600 feet from Door 402, the primary entrance to the GTC, which itself is still outside the terminal proper. Persons with disabilities cannot travel this distance quickly enough and are forced to wait in the outdoor bus shelter area, fully exposed to harsh weather conditions.



NYMAN TURKISH®

20700 Civic Center Dr.
Suite 115
Southfield, MI 48076
P: (248) 284-2480

c.  The boarding location is not located on the "shortest accessible route" to the nearest accessible entrance to the GTC lobby.

d.  The "heated" outdoor bus shelters are still frigid during winter months, with recorded ambient temperatures below 20 degrees, with the heat on.

e.  Traffic at the GTC is constantly congested because it also serves as the boarding location for cabs, charter buses, and shuttle services that serve parking lots, rental cars, and local hotels.

f.  The GTC boarding location, unlike the former location, does not have a service animal relief area, which results in frustration and hardship for disabled individuals and their service animals.

g.  The area in question is often flooded with noxious fumes when jets take-off from the immediately adjacent runway. This is particularly concerning for individuals who suffer asthma or other respiratory issues.


NYMAN TURKISH PC
20700 Civic Center Dr.
Suite 115
Southfield, MI 48076
P: (248) 284-2480

h.  For individuals, such as Plaintiff Paul Palmer, who uses a wheelchair and suffers from communication issues, the new boarding location is completely unusable, as there is no way for such individuals to seek assistance when they arrive at the GTC.

i.   The new location violates the equal protection and substantive due process rights of the disabled, as disabled riders, who disproportionately rely on public transportation to DTW, are forced to access the Airport from an inaccessible location, particularly when compared to the access provided to other transportation providers.

24.  In addition to the Plaintiffs, a number of public officials voiced concern for the relocation of public transportation at DTW.

25.  Michigan Governor Rick Snyder drafted a letter to Mr. Tom Naughton, CEO of the Wayne County Airport Authority, asking for his support in "maintaining the integrity of the current stop locations." **(Exhibit F, Letter from Governor Snyder).**

26.  On June 6, 2014, former Congressman John Dingell wrote to Wayne County Airport Authority CEO Tom Naughton asking for reconsideration of the decision to move public transportation to the GTC, citing safety and convenience issues for the disabled and elderly. **(Exhibit G, Letter from John Dingell).**

27.  Michael Ford, former CEO of the Ann Arbor Area Transportation Authority, also wrote to Mr. Naughton and expressed concerns that the



NYMAN TURKISH PC
20700 Civic Center Dr.
Suite 115
Southfield, MI 48076
P: (248) 284-2480

new boarding location would present challenges for the disabled and elderly. **(Exhibit H, Michael Ford Letter).**

28. Jerrold Jung, Chair of the State Transportation Commission, also wrote to Mr. Naughton formally requesting suspension of the move of public transportation to the GTC. **(Exhibit I, Jerrold Jung letter).**

29. Finally, on October 15, 2015, Michigan Attorney General Bill Schuette wrote to Mr. Naughton encouraging Mr. Naughton, to work with the disabled community to find a more favorable solution. **(Exhibit J, Schuette Letter).**

30. These pleas from public officials went unanswered as Defendants, on September 22, 2014, moved the public transportation boarding location to the farthest possible corner of the GTC.

31. Plaintiffs, and other similarly situated individuals, wish to use public transportation services to travel to and from DTW, but they have been effectively prevented from doing so due to the inaccessibility of the new boarding location.

32. The new boarding location at the GTC is inaccessible to persons with disabilities, particularly when compared to the prior location at International Arrivals.



NT NYMAN TURKISH℠
20700 Civic Center Dr.
Suite 115
Southfield, MI 48076
P: (248) 284-2480

33. 49 U.S.C. § 47107(a)(20) requires Defendants to "permit, to the maximum extent practicable, intercity buses or other modes of transportation to have access to the airport …."

34. To the extent public transportation is now relegated to the GTC instead of the Terminal Proper, Door 402, which has been used this past winter as a boarding location for some providers, such as U of M AirBus, and which continues to be used for buses other than public transit buses, is a viable alternative to the current location, and constitutes the "shortest accessible route" to the nearest accessible entrance to the GTC.

## COUNT I

**VIOLATION OF TITLE II PART A OF THE AMERICANS WITH DISABILITIES ACT AND REGULATIONS.**
**(Against Defendant Wayne County Airport Authority)**

35. Plaintiffs incorporate by reference all allegations set forth in paragraphs 1 through 34, inclusively.

36. In enacting the ADA, Congress expressly determined that society tends to isolate and segregate people with  disabilities; that individuals with disabilities continually encounter prejudice and discrimination, including outright exclusion and the failure to eliminate exclusionary criteria; that this nation should assure equality of opportunity for all participation, independent living, and economic self-sufficiency to individuals with



NYMAN TURKISH PC
20700 Civic Center Dr.
Suite 115
Southfield, MI 48076
P: (248) 284-2480

disabilities; and that continuing discrimination impedes them from competing on an equal basis and pursuing opportunities available to other citizens. 42 U.S.C. § 12101(a).

37. The express purpose of the ADA is "to provide a clear and comprehensive national mandate for eliminating discrimination against individuals with disabilities; to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and to ensure that the federal government plays a central role in enforcing the standards established in the ACT on behalf of individuals with disabilities." 42 U.S.C. § 12101(b).

38. Title II of the ADA provides in pertinent part that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

39. The Plaintiffs are individuals who constitute "qualified individual(s) with a disability" under the ADA.

40. Plaintiffs, and others similarly situated, disproportionately rely on public transportation services as their sole means of transportation when travelling to and from DTW.



NYMAN TURKISH℠
20700 Civic Center Dr.
Suite 115
Southfield, MI 48076
P: (248) 284-2480

41. Defendant Wayne County Airport Authority, as a government chartered entity, is subject to Title II of the ADA.

42. As a government chartered entity, Defendant Wayne County Airport Authority is subject to the Americans with Disabilities Act Accessibility Guidelines ("ADAAG")—regulations promulgated by the Department of Justice.

43. Section 4.6.2 of the ADAAG states that parking spaces "that serve a particular building shall be located on the shortest accessible route from parking to an [accessible entrance]."

44. By moving the parking space for public transportation boarding to the farthest possible corner of the GTC, Defendant has acted in disregard of Plaintiffs' disabilities, and has discriminated against them by forcing them to use an inaccessible area, in violation of the ADA.

45. By moving the parking space for public transportation boarding to the farthest corner of the GTC, Defendant Wayne County Airport Authority has denied Plaintiffs, and others similarly situated, equal access to their facilities causing injury, in violation of Title II of the ADA.

    a. Specifically, Plaintiff Paul Palmer is totally unable to access DTW via public transportation—a service he relies on to travel to and from DTW.



NT NYMAN TURKISH PC

20700 Civic Center Dr.
Suite 115
Southfield, MI 48076
P: (248) 284-2480

b. Because Mr. Palmer suffers from mobility and communication issues, even with the modifications made to the current location, including the installation of a direct-dial phone, he is still not able to use public transportation to access DTW, rendering him completely excluded from the services offered at DTW, due to the extreme distance of public transportation to the terminal proper.

c. The fumes present at the current GTC boarding location exacerbate Plaintiff Paul Palmer's breathing difficulties, which threatens his health and well-being.

d. Plaintiff Donna Rose, a totally blind individual, is unable to safely access DTW via the current boarding location.

e. The constant noise in the GTC, from buses, taxis, shuttles, and planes, limits Plaintiff Donna Rose's ability to rely on her hearing, a skill necessary for blind individuals to travel safely.

f. Additionally, the frigid temperatures, both inside and outside of the GTC during the winter months means that Plaintiff Donna Rose is completely unable to access DTW, as she is unable to tolerate extreme temperatures.



NYMAN TURKISH PC

20700 Civic Center Dr.
Suite 115
Southfield, MI 48076
P: (248) 284-2480

46. Defendant WCAA has consistently allowed shuttles, AirBus, and charter services to load and unload in the area directly outside Door 402, but not other public transportation providers.

47. Now that the area outside Door 402 is apparently no longer a no-parking area, it constitutes the shortest accessible route to the entrance of the GTC.

48. Door 402 is the entrance to the GTC most proximate to the Terminal Proper.

49. Defendant Wayne County Airport Authority's refusal to allow all public transportation providers to use Door 402 as a boarding location is in violation of the ADA and ADAAG guidelines, which require the "shortest accessible route" to the nearest accessible entrance to a facility.

50. Furthermore, Section 10.4.1 states, in regards to new construction of airports, "Elements such as ramps, elevators or other vertical circulation devices, ticketing areas, security checkpoints, **or passenger waiting areas** [GTC Lobby] shall be placed to minimize the distance which wheelchair users and other persons who cannot negotiate steps may have to travel compared to the general public."



NT NYMAN TURKISH PC

20700 Civic Center Dr.
Suite 115
Southfield, MI 48076
P: (248) 284-2480

51. The Ground Transportation Center at DTW is subject to these requirements, as it was recently repurposed and modified to accommodate public transportation.

52. The prior location at International Arrivals complied with Section 10.4.1 because it minimized the distance Plaintiffs, and others similarly situated, would have to travel to reach the terminal, and Door 402 would be similarly compliant.

53. The GTC location violates Section 10.4.1 because it forces Plaintiffs, and others similarly situated, to travel the greatest distance possible to reach elevators and other services located in the GTC.

54. Defendant is also in violation of several other regulations promulgated by the Department of Justice.

    a. Under 28 CFR § 35.150(a), "An airport operator must ensure that its services, programs, or activities are accessible to persons with disabilities."

    b. Defendants have failed to provide access to qualified persons with disabilities in the "most integrated setting," instead forcing them to the most segregated and inaccessible corner of their Airport in violation of 28 C.F.R. § 35.130(d).



NYMAN TURKISH PC
20700 Civic Center Dr.
Suite 115
Southfield, MI 48076
P: (248) 284-2480

  c. Under 28 CFR § 35.130(b)(7), "Airport operators must make reasonable modifications to its policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the airport can demonstrate that the modifications would fundamentally alter the nature of the service, program, or activity."

  d. Furthermore, under 28 CFR §35.150(b), "Existing facilities must be accessible to and usable by individuals with disabilities. Public entities must give priority to those methods that provide services, programs, and activities in the most integrated setting appropriate for persons with disabilities."

55. Defendants' actions have caused DTW to be effectively inaccessible to public transportation riders, a service disproportionately relied on by Plaintiffs, and others similarly situated.

56. Defendants have failed to operate their Ground Transportation facilities in a way that promotes accessibility to Plaintiffs, and others similarly situated.

57. Defendants' actions have caused irreparable harm, and an injunction ordering Defendants to allow public transportation providers, including


NYMAN TURKISH PC

20700 Civic Center Dr.
Suite 115
Southfield, MI 48076
P: (248) 284-2480

Michigan Flyer, to board at Door 402, or a similar location, is necessary

because Plaintiffs do not have an adequate remedy at law.

## COUNT II

### VIOLATION OF TITLE II PART B OF THE AMERICANS WITH DISABILITIES ACT.
#### (Against Defendant Wayne County Airport Authority)

58. Plaintiffs incorporate by reference all allegations set forth in paragraphs 1

through 57, inclusively.

59. Title II Part B of the Americans with Disabilities Act states in pertinent

part that, in regards to "existing facilities used in the provision of

designated public transportation services, it shall be considered

discrimination, for purposes of section 12132 of this title and section 794

of title 29, for a public entity to fail to operate a designated public

transportation program or activity conducted in such facilities so that,

when viewed in the entirety, the program or activity is readily accessible

to and usable by individuals with disabilities." 42 U.S.C. § 12148.


NT NYMAN TURKISH PC

20700 Civic Center Dr.
Suite 115
Southfield, MI 48076
P: (248) 284-2480

60. Title II Part B of the ADA also authorizes the Secretary of Transportation

to promulgate regulations related to the section, in addition to regulations

established by the Department of Justice. 42 U.S.C. § 12149.

61. Defendant Wayne County Airport Authority receives federal funds for

airport improvement projects, and therefore is required to provide

reasonable access to its facilities to public transportation providers. 49 U.S.C. § 47107(a)(20).

62.   Because its facilities are required to be used in the provision of designated public transportation services, it is subject to Title II Part B of the ADA.

63.   The current boarding location, when viewed in the aggregate, is not accessible to Plaintiffs, and others similarly situated.

64.   The current boarding location forces Plaintiffs, and other passengers, to travel 600 feet, just to access the GTC lobby through Door 402.

65.   A boarding location immediately outside of Door 402, which has now been used as an alternative boarding location for Charter Buses and Shuttles and regularly used for U of M Airbus, when viewed in the entirety, would make the GTC readily accessible to disabled public transportation users.

66.   The area immediately outside of Door 402 constitutes the "shortest accessible route" to the closest accessible entrance to the GTC.

67.   Defendant's actions have caused irreparable harm, and an injunction ordering Defendant to allow public transportation providers to board at Door 402, or a similar location, is necessary because Plaintiffs do not have an adequate remedy at law.



## COUNT III

**VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT.**
**(Against Defendant Delta Airlines)**

68. Plaintiffs incorporate by reference all allegations set forth in paragraphs 1 through 67, inclusively.

69. Title III of the Americans with Disabilities Act states in pertinent part that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

70. Detroit Metropolitan Wayne County Airport is a "place of public accommodation" as defined under Title III of the ADA.

71. Defendant Delta Air Lines, Inc., as a result of its role as both operator and tenant at Detroit Metro Airport, exercises control over the design and use of DTW facilities.

72. Through the acts and omissions alleged herein, Defendant Delta Air Lines has discriminated against Plaintiffs, and others similarly situated, by failing to provide reasonable access to its facilities.



NYMAN TURKISH, PC
20700 Civic Center Dr.
Suite 115
Southfield, MI 48076
P: (248) 284-2480

73.  Defendant Delta Air Lines has repeatedly demonstrated that other boarding locations, such as Door 402, are viable alternatives to the current location, but Defendant has failed to extend the opportunity to board in these preferential locations to public transportation providers such as Michigan Flyer and AirRide.

74.  Plaintiffs allege that in knowingly forcing them, and others similarly situated, to access public transportation at an inconvenient, inaccessible, and dangerous location, Plaintiffs and those similarly situated have been denied full access to and equal enjoyment of Defendant's facilities.

75.  Defendant's conduct is in violation of the equal access and nondiscrimination requirements set forth in Title III of the ADA, and has resulted in injury to Plaintiffs, and those similarly situated.

76.  Defendant's actions have caused irreparable harm, and an injunction ordering Defendant to allow public transportation providers to board at Door 402 is necessary because Plaintiffs do not have an adequate remedy at law.



NYMAN
TURKISH PC

20700 Civic Center Dr.
Suite 115
Southfield, MI 48076
P: (248) 284-2480

## COUNT IV

**VIOLATION OF TITLE V OF THE AMERICANS WITH DISABILITIES ACT.**
**(Against all Defendants)**

77.  Plaintiffs incorporate by reference all of the allegations set forth in paragraphs 1 through 76, inclusively.

78.  Title V of the Americans with Disabilities Act states in relevant part that "It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter." 42 U.S.C. § 12203(b).

79.  Defendants, who have been informed by Plaintiffs, public officials, and others of the discriminatory impact of their actions, have interfered with Plaintiffs' federally protected rights to access public transportation, in violation of Title V of the ADA, as they are now forced to access public transportation in the farthest, most inaccessible location possible.

80.  Plaintiffs hereby allege that in knowingly forcing them, and those similarly situated, to access public transportation services through the inaccessible and dangerous location, while allowing others preferential access to their facilities, the Defendants have acted with "discriminatory



NYMAN TURKISH PC

20700 Civic Center Dr.
Suite 115
Southfield, MI 48076
P: (248) 284-2480

animus," needlessly subjecting the persons with disabilities to the potential for loss of life and limb.

81. Defendants' actions have caused irreparable harm, and an injunction ordering Defendants to allow public transportation providers to board at Door 402, or a similar location, is necessary because Plaintiffs do not have an adequate remedy at law.

## COUNT V

**VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973.**
**(Against all Defendants)**

82. Plaintiffs incorporate by reference all of the allegations set forth in paragraphs 1 through 81, inclusively.

83. Section 504 of the Rehabilitation Act states in pertinent part that "no otherwise qualified individual with a disability in the United States, as defined in section 7(20), shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 29 U.S.C. § 794(a).

84. Defendants are both beneficiaries of federal financial assistance. Defendant Wayne County Airport Authority receives federal funds for



NT NYMAN TURKISH PC
20700 Civic Center Dr.
Suite 115
Southfield, MI 48076
P: (248) 284-2480

airport improvement projects, while Defendant Delta is subsidized by the federal government.

85.   Plaintiffs are qualified individuals with disabilities for purposes of Section 504 because they suffer from "a physical or mental impairment which for such individual constitutes or results in substantial impediment to employment." 29 U.S.C. § 705(A)(i).

86.   Defendants' actions have unreasonably denied Plaintiffs, and others similarly situated, reasonable and equal access to their facilities, in violation of Section 504 of the Rehabilitation Act.

87.   Defendants' actions have caused irreparable harm, and an injunction ordering Defendants to allow public transportation providers, including Michigan Flyer, to board at Door 402, or a similar location, is necessary because Plaintiffs do not have an adequate remedy at law.

## <u>COUNT VI</u>

### **VIOLATIONS OF ARTICLE III OF THE MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT.**
**(Against all Defendants)**

88.   Plaintiffs incorporate by reference all of the allegations set forth in paragraphs 1 through 87, inclusively.

89.   The Persons with Disabilities Civil Rights Act states "full and equal utilization of public accommodations, public services, and educational



NT NYMAN TURKISH PC
20700 Civic Center Dr.
Suite 115
Southfield, MI 48076
P: (248) 284-2480

facilities without discrimination because of a disability is guaranteed by this act and is a civil right." MCL 37.1102(1).

90. Under Article III of the PWDA, it is unlawful to "Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation or public service because of a disability that is unrelated to the individual's ability to utilize and benefit from the goods, services, facilities, privileges, advantages, accommodations or because of the use by an individual of adaptive devices or aids." MCL 37.1302(a).

91. Defendants jointly operate DTW, which is a place of public accommodation for purposes of the PWDA because it is "a transportation facility of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public." MCL 47.1301(a).



92. In addition, DTW is subject to the PWDA because it qualifies as a public service under the PWDA, as it is operated by a subdivision of the State of Michigan. MCL 37.1201(b).

93. Defendants' actions have caused irreparable harm, and an injunction ordering Defendants to allow public transportation providers, including

Michigan Flyer, to board at Door 402, or a similar location, is necessary

because Plaintiffs do not have an adequate remedy at law.

## <u>COUNT VII</u>

### **VIOLATIONS OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION.**
**(Against Defendant Wayne County Airport Authority)**

94.  Plaintiffs incorporate by reference all of the allegations set forth in

paragraphs 1 through 93, inclusively.

95.  The Equal Protection Clause of the Fourteenth Amendment provides that

no State "deny to any person within its jurisdiction the equal protection

of the laws." U.S. CONST. amend. XIV, § 1.

96.  Defendant continues to allow other transportation providers, but not

public transportation—a service disproportionately relied on by Plaintiffs

and those similarly situated—preferential access to DTW facilities.

97.  Defendant treats Plaintiffs, and those similarly situated, as second-class

citizens, effectively relegating them to the farthest corner of DTW.

98.  This treatment impermissibly discriminates against Plaintiffs, and those

similarly situated, as it denies them equal protection of the law.

99.  Defendant's actions have caused irreparable harm, and an injunction

ordering Defendant to allow public transportation providers, including



NYMAN TURKISH PC
20700 Civic Center Dr.
Suite 115
Southfield, MI 48076
P: (248) 284-2480

Michigan Flyer, to board at Door 402, or a similar location, is necessary because Plaintiffs do not have an adequate remedy at law.

WHEREFORE, Plaintiffs request the relief set forth below.

## PRAYER FOR RELIEF

Plaintiffs pray for the following relief:

100. A declaration that Defendant Wayne County Airport Authority and Defendant Delta Air Lines, Inc.'s course of action has unlawfully violated Plaintiffs' rights under the Americans with Disabilities Act of 1990, Section 504 of the Rehabilitation Act of 1973, the Michigan Persons with Disabilities Civil Rights Act, and the Fourteenth Amendment of the United States Constitution.

101. An injunction preventing Defendants from continuing to use the farthest end of the Ground Transportation Center as a boarding location for public transportation, and ordering Defendants to allow public transportation providers to board immediately outside of Door 402, the location with the shortest accessible route within the GTC, or a similar accessible location, such as the employee bus stop at International Arrivals, the Charter Bus unloading zone on the Departures Level, or outside Door 5 of the Arrivals Level, which is frequently used for Charter Buses.



NYMAN TURKISH PC
20700 Civic Center Dr.
Suite 115
Southfield, MI 48076
P: (248) 284-2480

102. Reasonable Attorney's fees and costs for the prosecution of this matter.

103. All other relief that this Honorable Court deems just and proper.

Respectfully Submitted,

NYMAN TURKISH PC

/s/ Jason M. Turkish
Jason M. Turkish, Michigan Bar # P76310
Ryan T. Kaiser, Michigan Bar # P79491
20700 Civic Center Drive, Suite 115
Southfield, MI 48076
Phone: (248) 284-2480
Fax: (248) 262-5024
Jason.Turkish@NymanTurkish.com
Ryan.Kaiser@NymanTurkish.com

Melissa M. Nyman, California Bar #293207
5800 Stanford Ranch Road, Suite 720
Rocklin, CA 95765
Phone: (916) 218-4340
Fax: (916) 218-4341
Melissa.Nyman@NymanTurkish.com

Dated: October 12, 2015          *Attorneys for Plaintiffs*



NYMAN TURKISH PC
20700 Civic Center Dr.
Suite 115
Southfield, MI 48076
P: (248) 284-2480

## VERIFICATION

Paul Palmer, under penalty of perjury of the laws of the United States, states: That he is the named Plaintiff in the above-styled Verified Complaint, that he has read, is familiar with, and has personal knowledge of the contents of the foregoing Verified Complaint; and that to the best of his knowledge, information, and belief the allegations thereof are true and correct.

_____
Paul Palmer

Subscribed and sworn before me this
_____9th_____ Day of October, 2015

_____
Notary Public

LISA C. GINDERSKE
Notary Public, State of Michigan
County of Shiawassee
My Commission Expires May, 30, 2020

## VERIFICATION

Donna Rose, under penalty of perjury of the laws of the United States, states: That she is the named Plaintiff in the above-styled Verified Complaint, that she has read, is familiar with, and has personal knowledge of the contents of the foregoing Verified Complaint, and that to the best of her knowledge, information, and belief the allegations thereof are true and correct.

_____
Donna Rose

Subscribed and sworn before me this
____11 th____ Day of October, 2015

_____
Notary Public

LISA C. GINDERSKE
Notary Public, State of Michigan
County of Shiawassee
My Commission Expires May, 30, 2020